IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WILL R. HOSKINS, JR.                                                                                     PLAINTIFF

VS.                                                         CIVIL ACTION NO. 3:15cv237-DPJ-FKB

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY                                                                                   DEFENDANT

## REPORT AND RECOMMENDATION

### I. Introduction and Procedural History

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration.  Presently before the Court is Plaintiff's memorandum in support of his complaint [9] and the Commissioner's motion to affirm [11].  Having considered the motions, supporting memoranda, and the administrative record, the undersigned recommends that Plaintiff's motion be granted, that the Commissioner's motion be denied, and that this matter be remanded for further proceedings.

Will R. Hoskins, Jr., was born on April 27, 1960, and was 54 years of age at the time of the final decision of the ALJ.  He has a high school education and past relevant work experience as a truck driver.  He last worked in early 2008, and his last insured date was December 31, 2013.  Hoskins filed for a period of disability, disability insurance benefits, and supplemental security income on June 11, 2009, alleging that he became disabled on March 1, 2008.  Since the filing date, his application has gone through several procedural twists and turns. After it was denied initially and on reconsideration, a hearing was held on June 9, 2010, before ALJ Charles C. Pearce. Plaintiff represented himself at the hearing.  ALJ Pearce issued a decision on June 22, 2010, finding that Plaintiff had the

impairments of depression, back pain, and hypertension, but that none of these was a severe impairment. R. 25-30, [8] at 30-35. He therefore found that Plaintiff was not disabled. R. 30, [8] at 35. The Appeals Council denied review. R. 349, [8] at 354. Upon appeal to this court, the Court entered an agreed order of voluntary remand. R. 354, [8] at 359. A second ALJ hearing was held before ALJ Pearce on January 17, 2013. R. 314, [8] at 319. In a decision dated January 23, 2013, the ALJ again found that Plaintiff was not disabled. R. 364, [8] at 369. Upon review, the Appeals Council found that the record before the ALJ had been incomplete and that the ALJ had not considered all of the evidence. R. 384, [8] at 389. It therefore remanded the matter to a new ALJ. *Id.* On June 26, 2014, a third hearing was held, this time before ALJ Laurie H. Porciello. ALJ Porciello issued a partially favorable decision on January 9, 2015, finding that prior to the date of the hearing, June 26, 2014, Plaintiff had not been disabled, but that he had become disabled on that date. R. 232, [8] at 237. The effect of this decision was that Plaintiff is ineligible for disability insurance benefits but may be eligible for supplemental security income, should he meet the non-disability requirements. Hoskins then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the Commissioner's denial of disability insurance benefits.

## II. **Evidence Before the ALJ**

The medical record indicates that Hoskins has received only infrequent medical treatment. In the 1990's, he underwent a cervical fusion at C5-6. He has a history of hypertension and depression, but he has not received regular treatment for either of these conditions. In June of 2009, he presented at an emergency room of the North Mississippi

Medical Center (NMMC) with ear problems and was found to be hypertensive. R. 190-95, [8] at 195-200. He was referred to the Family Medicine Residency Center (FMRC) for followup. R. 194, [8] at 199. Plaintiff was seen at FMRC on July 21, 2009. At the office visit, he complained of depression and numbness and tingling in his right arm. R. 200, [8] at 205. Physical examination revealed a full range of motion and normal strength in all extremities and slight tenderness over the cervical spine. R. 202, [8] at 207. Mental status examination was normal. R. 203, [8] at 208. He was prescribed Lisinopril-HCTZ for hypertension, Celexa for depression, and Naproxen for pain. R. 203, [8] at 206. The record contains no further indication of medical treatment until January of 2011, when Hoskins was seen at the Wesley House Community Clinic, where he was treated with and provided over-the-counter anti-inflammatory medications, anti-hypertensives, and anti-depressants. R. 574-80, [8] at 579-85. Plaintiff's treatment apparently ceased when the clinic closed. Hoskins next sought medical treatment on March 5, 2012, when he presented at the emergency room of Rush Foundation Hospital (Rush) enter complaining of a rash. R. 542-45, [8] at 547-50. On March 21, 2012, he returned to the emergency room at Rush complaining of groin pain after having lifted 150 pounds. F. 513-17, [8] at 518-22. There is no indication of any other medical treatment.

     In the course of his disability application, Hoskins has undergone three consultative mental examinations by Dr. Jan Boggs. The first of these was conducted on September 23, 2009. Dr. Boggs noted that at the beginning of the exam, Hoskins appeared mildly sedated and his answers to questions trailed off into mumbling. R. 206, [8] at 211. While Dr. Boggs was asking background questions, and before Dr. Boggs could begin the

3

mental status portion of the exam, Hoskins began to sob uncontrollably. *Id.* According to Dr. Boggs, the sobbing had a histrionic quality. R. 208, [8] at 213. Because Hoskins could not control his sobbing, the examination could not be completed. R. 206, [8] at 211. Dr. Boggs stated that Hoskins was in no shape to be relating to others and seemed to be taken care of by his fiancée, who had accompanied him to the exam. R. 208, [8] at 213. Dr. Boggs diagnosed him with depressive disorder NOS. *Id.*

A second exam, conducted on April 12, 2011, was also unsuccessful. Hoskins entered the room clutching his back and saying that he could not sit down. R. 582, [8] at 587. When Dr. Boggs spoke, Hoskins said he could not understand what Dr. Boggs was saying and then began to sob hysterically. *Id.* Again, Hoskins could not stop the sobbing, and so he was escorted out and waited in the car while his fiancé answered background questions. *Id.* Dr. Boggs described Hoskins as very agitated and depressed and observed that based upon his behavior, he probably needed inpatient treatment. R. 584, [8] at 589. Dr. Boggs also observed, however, that Hoskins's behavior could have been used instrumentally for disability. *Id.*

Dr. Boggs attempted to perform a third exam on September 3, 2014. Hoskins cried during parts of the exam and swayed and rocked. R. 606, 608, [8] at 611, 613. Dr. Boggs stated that psychometric testing results were not valid because Hoskins was not sufficiently invested in the testing. R. 606, [8] at 611. Diagnosis was as follows: Somatic disorder, primarily pain; major depression, recurrent, moderate to severe; histrionic personality features; back surgery with residual pain; hypertension and cholesterol; shoulder and right arm pain; cervical pain; and use of a cane. R. 609, [8] at 614. Dr.

4

Boggs stated that Plaintiff's pain problems were compounded by depression and personality factors. *Id.* He described Plaintiff's presentation as dramatic with considerable self-pity. *Id.* Dr. Boggs observed that Plaintiff's adaptation had not changed much since his exam three years earlier, and he expressed doubt that Plaintiff's adaptation would change much in the coming year. *Id.*

Dr. Boggs completed a mental RFC assessment in conjunction with this third examination. In the assessment, Dr. Boggs rated as good Plaintiff's ability to follow simple job instructions and maintain personal appearance. R. 614, [8] at 619. He rated as fair Plaintiff's ability to follow work rules, interact with coworkers, maintain concentration, function independently, and related predictably in social situations. R. 612-13, [8] at 617-18. He rated as poor Plaintiff's ability to deal with the public, use judgment, interact with supervisors, deal with work stresses, demonstrate reliability, and behave in an emotionally stable manner. R. 612, 614, [8] at 617, 619.

Hoskins has undergone two consultative physical examinations, both by Dr. Azhar Pasha. At the first exam, conducted on October 22, 2010, Plaintiff complained of pain in the right shoulder, right hip, and lower back. R. 562, [8] at 567. He had a decreased range of motion in the neck and right shoulder, minimal discomfort at L5-S1, and some right hip bursitis. R. 562-63, [8] at 567-68. Plaintiff had a full range of motion in the pelvic girdle and lumbar spine and had no acute sensory or motor deficits. *Id.* Strength in the right hand was 4/5; strength was 5/5 in the left hand and bilaterally in the lower extremities. R. 563, [8] at 568. Straight leg raising was negative. *Id.* Gait was normal. *Id.* Consultative imagining of the cervical spine and right shoulder performed two weeks

5

later showed a cervical fusion at C5-6, intervertebral discogenic disease at C6-7, degenerative spondylosis at C7-T1, and mild degenerative changes of the right AC joint. R. 524-25, [8] at 529-30.  Following this examination, Dr. Thomas Jeffcoat, a non-examining consultant, completed a physical RFC assessment in which he opined that Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds and that he could stand/walk for six hours and sit for six hours.  R. 565-72, [8] at 570-77.  He identified no other limitations. *Id.*

Dr. Pasha evaluated Plaintiff a second time on August 26, 2014.  He again noted decreased grip strength and motor ability in Plaintiff's right hand.  R. 603, [8] at 608.  Examination also revealed decreased range of motion in the cervical spine, involuntary mild to moderate spasm in the neck, weakness in the left lower extremities, positive straight leg raising at 55 degrees, and an unstable gait, requiring a cane for ambulation.  R. 603-04, [8] at 608-09.  In a medical source statement after the second examination, Dr. Pasha opined that Plaintiff could perform work at less than the full range of sedentary exertion.  R. 598-601, [8] at 603-06.

At the 2014 hearing, Hoskins testified as follows.  He lives with his friend, Anita Harris.  R. 262, [8] at 267.  He is unable to work because of back, hip, and leg pain and numbness and tingling.  R. 263-69, [8] at 268-74.  He also has problems with walking and balance and for this reason has used a cane to ambulate since the first of 2014.  R. 263, 266-67, [8] at 268, 271-72.  On a scale of one to ten, his pain is at a level of seven most of the time.  R. 270, [8] at 275.  He previously received some medical treatment at Wesley House Community Clinic but has had no access to health care since early 2013. R. 264-

6

65, [8] at 269-70.  Plaintiff estimated that he could stand for only four or five minutes at a time, can lift or carry about five pounds, and can walk less than a block before having to stop because of pain.  R. 268-69, 271, [8] at 273-74, 276.  He also suffers from hypertension.  R. 273, [8] at 278.  Ms. Harris checks his blood pressure occasionally and buys over-the-counter pain medication for him.  *Id.*  When Plaintiff's blood pressure is high or his pain becomes too intense, he takes over-the-counter medication containing a sleep aid and goes to sleep.  *Id.*  Plaintiff suffers from depression.  R. 265-66, [8] at 270-71.  When he was able to obtain medication, his depression was better.  *Id.*  He has not sought further mental health treatment because of embarrassment.  R. 275-76, 277, [8] at 280-81, 282.  He cries often and stays to himself.  R. 275, [8] at 280.  Plaintiff did not recall the last time he had left the house prior to the hearing.  R. 276, [8] at 281.

Also testifying on Plaintiff's behalf was Ms. Harris.  She stated that because of his depression, she and Plaintiff cannot be around each other very much.  R. 280-81, [8] at 285-86.  Ms. Harris testified that Hoskins suffers from numbness on one side of his body and began losing his balance and dropping things around the first of 2014.  R. 279, 282, [8] at 284, 287.  She stated that in the past Plaintiff went to church regularly and served as an usher but that now he goes nowhere.  R. 280, 282, [8] at 285, 287.

The ALJ heard the testimony of a vocational expert (VE), Donald E. Woodall, at the hearing.  The VE classified Plaintiff's past relevant work as that of maintenance worker (medium, skilled), door builder (medium, semi-skilled), and truck driver (medium, semi-skilled).  R. 286, [8] at 291.  The VE testified in response to two hypotheticals posed by the ALJ.  In the first, the ALJ described a person of Plaintiff's age and education and

7

having work experience as a truck driver and door builder, who could perform light work, was limited to simple, routine tasks, could only occasionally reach overhead with his dominant upper extremity, and was limited to only occasional interaction with coworkers and the public.  R. 287, [8] at 292.  The VE stated that such a person could perform the jobs of cleaner, bench assembler, and small parts assembler (all of which are classified as light, unskilled). R. 287-88, [8] at 292-93.  In the second hypothetical, the ALJ added the limitation that the individual could frequently but not constantly use his hand for fine or gross manipulation. R. 288, [8] at 293.  The VE responded that an individual with these characteristics could perform the three jobs previously identified.  *Id.*[1]

Plaintiff's attorney posed two additional hypotheticals to the VE.  In the first, he described a person with all of the characteristics and limitations in the previous hypotheticals but who also could not work a job that was fast-paced or in which he was required to meet a production quota.  R. 288-89, [8] at 293-94.  The VE responded that this additional limitation would exclude the two assembly jobs but that the individual could

---

[1]The testimony as transcribed is unclear on this point.  The transcription reads as follows:

> Q:   Now, if I add for consideration that he can frequently but not constantly use the hands for fine or gross manipulation, would that eliminate any of these jobs?
>
> A:   No, ma'am.  These jobs require more than frequent use of the hands.

R. 288, [8] at 293.  It appears, based upon the ALJ's use of this hypothetical to support her decision, as well as the VE's subsequent testimony in response to questions by Plaintiff's attorney, that either the VE's answer was mistranscribed, or that everyone understood him to mean that these jobs did *not* require more than frequent use of the hands.

8

still perform the job of cleaner. R. 289, [8] at 294. In the final hypothetical, the attorney added the limitation that the individual would be unable to stand or walk for more than four hours in an eight-hour work day. *Id.* The VE responded that this limitation would mean that the individual was limited to sedentary work and would exclude the job of cleaner. *Id.*

### III. **The Decision of the ALJ and Analysis**

In her decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[2] She found that since March 1, 2008, Hoskins has had the severe impairments of lumbar and cervical disc disease, degenerative joint disease,

---

[2]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

9

affective disorder, and personality disorder. R. 234, [8] at 239. At step three, the ALJ determined that since his alleged onset date, Hoskins has not had an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 235-36, [8] at 240-41.

At the remaining steps, the ALJ made separate findings for the period prior to June 26, 2014, and for the period from that date to the present. As to the earlier period, she found that Plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 416.967(c), with the following limitations: He could only occasionally reach overhead with the dominant upper extremity, he could frequently but not constantly use his hands to perform fine or gross manipulations, and he was limited to performing simple, routine tasks and to only occasional interaction with coworkers and the public. R. 236, [8] at 241. She considered Hoskins's subjective allegations of pain and limitations but found that they were not fully credible in light of the lack of supporting objective evidence. R. 238, [8] at 243. At step four, the ALJ found, based upon the testimony of the VE, that prior to June 26, 2014, Hoskins could not have returned to his past work but that he could have performed the alternative jobs of cleaner, bench assembler, and small parts assembler. R. 247, [8] at 252. She therefore determined that Hoskins had not been disabled prior to June 26, 2014. *Id.*

The ALJ found that as of June 26, 2014, Plaintiff had the residual functional capacity for a range of sedentary work, subject to the same non-exertional limitations as identified previously. R. 244, [8] at 249. In making this finding, she gave great weight to the opinion of Dr. Pasha and his August 26, 2014, examination of Plaintiff. R. 246, [8] at

10

251. She concluded, based upon Rule 201.14, that a finding of "disabled" was directed beginning on June 26, 2014, the date of the hearing. R. 247, [8] at 252.

The ALJ based her determination as to Plaintiff's onset date primarily on the examination of Dr. Pasha and the limitations indicated by that examination, particularly, the medical necessity of an assistive device for ambulation. She stated that she had given careful consideration to an earlier onset date and specifically to the fact that Plaintiff had testified that he had been using a cane since early in 2014 and to the possibility that the limitations indicated by Dr. Pasha were likely the culmination of a progression of symptoms. R. 246, [8] at 251. However, she noted that there was no treatment record or medical opinion supporting the need for a cane prior to Dr. Pasha's examination and stated that the lack of treatment and other factors suggested that Plaintiff had exaggerated his symptoms during the interim period prior to the date of the hearing, when he appeared using the cane to ambulate. *Id.*

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[3]

---

[3] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

11

Hoskins alleges that the ALJ erred by failing to follow the proper procedure for determining Plaintiff's onset date. According to Plaintiff, under SSR 83-20, the ALJ was required to adopt the onset date as alleged by Plaintiff.

SSR 83-20, 1983 WL 31249 (SSA 1983), sets out the policy and procedure for the determination of the date of onset of disability. The ruling points out that in many claims, as in the present one, the onset date is critical, and therefore it must be correctly established and supported by the evidence. *Id.* Relevant factors are the claimant's allegation, work history, and the medical evidence. *Id.* at *2. The starting point is the claimant's allegation of when the disability began, and that date is used as the onset date when it is consistent with the available evidence. *Id.* Nevertheless, the onset date can never be inconsistent with the medical evidence of record. *Id.* at *3.

Plaintiff's argument as articulated in his brief is without merit. There is simply no medical evidence consistent with Plaintiff's allegation that he became disabled in March of 2008. Therefore, the ALJ was not required to accept the Plaintiff's alleged onset date. However, she was required to do more than merely guess. SSR 83-20 explains that in the case of slowly progressive conditions, it may be impossible to obtain medical evidence as to the precise date of onset. *Id.* at *2. In such a case, the decision maker may be able to reasonably infer the onset date. *Id.* at *3. However, such an inference must have a legitimate medical basis. *Id.* The ruling states that where the onset date must be inferred and the evidence is ambiguous, the ALJ is to call upon the services of a medical advisor at the hearing in order to establish an onset date. *Id.*

In *Spellman v. Shalala*, 1 F.3d 357 (5th Cir. 1993), the claimant alleged a disability date of September 8, 1982, the date she stopped working. The ALJ found that the claimant was not disabled. The Appeals Council granted review and determined that while the claimant had not become disabled on her alleged onset date, she had become disabled due to a mental impairment on October 1, 1985. The Appeals Council reached its decision as to the onset date based upon the first evidence of a significant mental disability - a consultative mental status evaluation performed in April of 1986. It noted that there was no medical evidence of a severe mental impairment prior to the date of the evaluation. It then concluded that it was reasonable to assume that the condition had been severe approximately six months prior to the examination. The Fifth Circuit, relying upon SSR 83-20, reversed the Appeals Council's determination of the onset date. The court held that because the claimant's impairment was of a slowly progressive nature, and because the medical evidence was ambiguous as to an onset date, the Appeals Council should not have inferred an onset date without consulting a medical advisor. *Spellman*, 1 F.3d at 362-64.

The undersigned finds *Spellman* to be controlling. As did the Appeals Council in *Spellman*, the ALJ in the present case looked to the earliest evidence of a significant physical impairment - the date of the second consultative physical examination - and then inferred that Plaintiff must have been similarly impaired two months prior to that evaluation. Arguably, the ALJ's selection of the hearing date as the onset date was not wholly arbitrary, as the ALJ identified the Plaintiff's use of an assistive device at the

hearing as a basis for her selection of the onset date. Nevertheless, this fact did not rise to the level of a "legitimate medical basis" for her decision.

The ALJ found that many of Plaintiff's allegations regarding his condition were not credible. She specifically found that none of Plaintiff's presentations to Dr. Boggs was credible, noting the inconsistencies between those presentations and Plaintiff's essentially normal presentations at his other medical encounters. R. 241-42, [8] at 246-47. Similarly, she gave little weight to the statements of Ms. Harris concerning Plaintiff's limitations, observing that while Ms. Harris's statements may have truthfully represented her observations, those observations merely reflected Plaintiff's own view of his limitations. Thus, the ALJ was left with a sparse treatment record and the consultative examinations performed by Dr. Pasha as the primary evidence as to an onset date. This evidence was ambiguous and did not provide a legitimate medical basis for the ALJ's decision. Thus, the undersigned concludes that the ALJ erred in failing to obtain the services of a medical advisor to assist her in determining Plaintiff's onset date and that for this reason, remand is warranted.

## IV.  **Conclusion**

The undersigned concludes that the ALJ erred in her determination of Plaintiff's onset date. Accordingly, the undersigned recommends that the Commissioner's motion be denied and that this matter be remanded. On remand, the Commissioner shall obtain the assistance of medical advisor in order to determine the date of the onset of Plaintiff's disability.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 3rd day of August, 2016.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE